UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN DOE,

                          Plaintiff,

                                                          3:19-CV-1189
v.                                                        (MAD/ML)

CORNELL UNIV.; LANCE R. COLLINS,
Dean of Engineering; WILLIAM CARPENTER,
Officer; DAVID FORBES DELCHAMPS,
Associate Professor; COLL. OF ENG'G;
CORNELL UNIV. POLICE DEP'T; and
WENDY GILMORE-FITZGERALD,

                          Defendants.
_____

APPEARANCES:                                             OF COUNSEL:

KIRWAN LAW FIRM, PC                                      TERRY J. KIRWAN, ESQ.
  Counsel for Plaintiff
AXA Tower I, 15th Floor
100 Madison Street
Syracuse, New York 13202

CORNELL UNIVERSITY                                       CONRAD R. WOLAN, ESQ.
  Counsel for Defendants                                 VALERIE L. DORN, ESQ.
300 CCC Building, Garden Avenue
Ithaca, New York 14853

MIROSLAV LOVRIC, United States Magistrate Judge

<u>**MEMORANDUM-DECISION and ORDER**</u>

Plaintiff "John Doe" ("Plaintiff") commenced this action on September 25, 2019, against Defendants Cornell University, Lance R. Collins, William Carpenter, David Forbes Delchamps, College of Engineering, Cornell University Police Department, and Wendy Gilmore-Fitzgerald (collectively "Defendants").[1]  (Dkt. No. 1.)  Currently before the Court is Plaintiff's motion for a protective order to proceed using the pseudonym "John Doe."  (Dkt. No. 68.)  For the reasons set forth below, Plaintiff's motion is denied.

**I.      RELEVANT BACKGROUND**

**A.      Plaintiff's Claims**

On October 4, 2019, Plaintiff amended the Complaint as of right.  (Dkt. No. 8.)  Plaintiff alleges that he was discriminated and retaliated against by Defendants based on his race, religion, sex, national origin, disability, and status as a veteran, in violation of Title II of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983.  (*Id.*)

More specifically, Plaintiff alleges that he is a disabled veteran who served with the United States Army Special Forces.  (*Id.*)  Plaintiff alleges that in the Fall of 2017, he enrolled as a student at Cornell University, studying electrical and computer engineering.  (*Id.*)  Plaintiff alleges that in December 2017, he began working at the Academic Diversity Initiative Office ("OADI") in the position of Student Administrative-II.  (*Id.*)

Plaintiff alleges that in January 2018, he was placed on academic leave by Defendant Delchamps and evicted from campus housing in Hasbrouck Apartments, which were discriminatory acts by Defendants.  (*Id.*)

---

[1]      Plaintiff also named Luke Zachary Fenchel as a defendant, but he was dismissed from the action on May 21, 2020.  (Dkt. No. 73.)

Plaintiff alleges that in the Spring 2018, in retaliation, employees of Defendant Cornell University violated Plaintiff's rights under the Family Educational Rights and Privacy Act.  (*Id*.) Plaintiff alleges that on June 29, 2019, he filed a complaint with the New York State Education Department, which was "frivolously denied" because "the officials of Cornell University conspired with the Privacy Officer, as an attempt to suppress the Plaintiff."  (*Id*.)

Plaintiff alleges that in the Spring of 2018, he had a romantic relationship with an individual and then discovered that she was having an intimate sexual relationship with a professor and that her visa had expired.  (*Id*.)  Plaintiff alleges that he "brought such grievances, under Cornell's supervision via student name Xitang Zhao, and Title IX bias reporting.  It resulted in utter retaliation and discrimination by the officials of Cornell University against the Plaintiff."  (*Id*.)  Plaintiff alleges that on April 6, 2019, he sent a "cease-and-desist notice to Xitang Zhao who is a Cornell . . . student, who was being used by the Cornell (sic) and [Defendant] Delchamps to harass, denigrate, aggravate, and subjugate Plaintiff's life, protected class, health, and career."  (*Id*.)

Plaintiff alleges that on April 28, 2018, he was contacted by Defendant Carpenter—from his personal e-mail address—asking Plaintiff to meet.  (*Id*.)  Plaintiff alleges that he responded stating that he was seeking medical help.  (*Id*.)  Plaintiff alleges that he received "multiple harassing calls from [Defendant] Carpenter ranging from 10:41Am to 10:42 Am."  (*Id*.)  Plaintiff alleges that on "multiple occasions" Defendant Carpenter "walked into Plaintiff's off-campus residence . . . where [Defendant] Carpenter has no jurisdiction to it" and that Defendant Carpenter "violently threatened Plaintiff . . . . [and] used an excessive brute force" by banging loudly on Plaintiff's door.  (*Id*.)  Plaintiff alleges that Defendant Carpenter's actions were discriminatory and retaliatory based on Plaintiff's protected class.  (*Id*.)

2

Plaintiff alleges that on June 29, 2018, he received a letter from Defendant Collins stating that his student status was terminated and that because his job as a Student Administrative-II was tied to his student status, his employment was also terminated.  (*Id*.)  Plaintiff alleges that he was terminated in retaliation for bringing concerns of harassment, retaliation, and discrimination to the attention of Defendant Cornell University.  (*Id*.)  Plaintiff alleges that "[t]he discrimination was based on [his] race (Southeast Asian), nationality, disability, gender, veteran status, color, sexual orientation (as a heterosexual), and religious beliefs ([he] is a non-denominational Christian)."  (*Id*.)

Plaintiff alleges that in the Fall of 2018, he filed an Article 78 petition in the "State of New York to overturn the frivolous termination of his student status."  (*Id*.)  Plaintiff alleges that after filing the Article 78 petition, he was issued an eviction notice from the College Town Terrace Apartments, which was in retaliation for filing the Article 78 claim.  (*Id*.)

Plaintiff alleges that after he was evicted from College Terrace Town Apartment, he filed an EEOC complaint.  (*Id*.)  Plaintiff alleges that in March 2019, "as a result of continued pattern of retaliation and discrimination, [his] car was towed, and he was evicted from the Maplewood Apartments, which resulted in [him] being on a homeless status."  (*Id*.)  Plaintiff alleges that he filed a claim with the Department of Housing and Urban Development.  (*Id*.)

Plaintiff alleges that on May 16, 2019, he filed a claim with the New York State Department of Human Rights, which was "frivolously denied based on the agency not having any 'jurisdiction' over his claim."  (*Id*.)  Plaintiff alleges that Defendant Cornell University "conspired with the Department Director at Albany, New York."  (*Id*.)

Plaintiff alleges that on June 24, 2019, he filed a claim with the Office of Civil Rights, which was "frivolously denied based on the agency not having any 'jurisdiction' over his claim."

3

(*Id.*)  Plaintiff alleges that Defendant Cornell University "conspired and influenced with the employees of the Office of Civil Rights, in order to suppress Plaintiff to exercise his constitutional rights."  (*Id.*)

Plaintiff alleges that "[o]n June-July 2019, [he] field a claim with the National Labor Relation Board.  That claim was frivolously denied based on the agency not having any 'jurisdiction' over his claim.  Plaintiff believes that Cornell conspired and influenced the Director of the National Labor Relation Board . . . as an attempt to suppress Plaintiff to exercise his constitutional rights."  (*Id.*)

Plaintiff alleges that on June 29, 2019, he filed a claim with the American Disability Act, which is currently pending.  (*Id.*)

Plaintiff alleges that on July 5, 2019, "Cornell representatives . . . filed libelous paperwork to stop Plaintiff from having due process on the Article 78 matter."  (*Id.*)

Plaintiff alleges that on July 16, 2019, he filed a complaint with the Community Police Board, which is still pending.  (*Id.*)

As relief, Plaintiff seeks compensatory damages, punitive damages, reinstatement of his student status, and reinstatement of his student-employment status.  (*Id.*)

**B.      The Parties' Briefing on Plaintiff's Motion for a Protective Order**

**1.      Plaintiff's Memorandum of Law**

Generally, in support of Plaintiff's motion for a protective order, Plaintiff asserts the following two arguments: (1) Plaintiff's interest in proceeding anonymously outweighs the public's interest in disclosure of his identity because Plaintiff (a) suffers from post-traumatic stress disorder, anxiety, depression, and paranoid personality disorder, (b) is fearful that identification poses a risk of retaliatory physical or mental harm, and (c) considers this matter

4

highly sensitive and he expects to work in a position that requires high level security clearance; and (2) federal courts regularly allow plaintiffs who suffer from mental disorders to proceed anonymously and if the Court denies Plaintiff's motion, "he will be forced to consider not pursuing his claim against Defendants 'due to the stigmatization that may result.'"[2]  (*See generally* Dkt. No. 68, Attach. 2 [Pl.'s Mem. of Law].)

### 2.    Defendants' Opposition Memorandum of Law

Generally, in opposition to Plaintiff's motion for a protective order, Defendants assert the following two arguments: (1) the law favors identification of parties; and (2) consideration of the factors set forth in *Sealed Plaintiff*, do not warrant the granting of anonymity in this case because (a) factors five and seven through ten weigh against anonymity, especially in light of the fact that Plaintiff filed the Article 78 proceeding under his full name, (b) Plaintiff is unable to meet his burden with respect to factors one through four, and (c) Defendants would be prejudiced by allowing Plaintiff to proceed anonymously because Plaintiff's allegations attack the professionalism of Defendants.  (*See generally* Dkt. No. 75 [Defs.' Mem. of Law].)

## II.    APPLICABLE LEGAL STANDARD

Federal Rules of Civil Procedure 10(a)[3] and 17(a),[4] require all parties to be named, and are intended to "further the fundamental right of public access to the courts" because "the public has a right to know who is utilizing the courts."  *Doe #1 v. Syracuse Univ.*, 18-CV-0496, 2018

---

[2]      In the future, counsel is cautioned to comply with the requirement in Local Rule 7.1(b)(1) (previously Local Rule 7.1(a)(1)) that "[a]ll memoranda of law shall contain a table of contents."

[3]      Rule 10(a) states that "[t]he title of the complaint must name all parties."  Fed. R. Civ. P. 10(a).

[4]      Rule 17(a) states that "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a).

WL 7079489, at *3 (N.D.N.Y. Sept. 10, 2018) (Peebles, M.J.), *report and recommendation adopted by* 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020) (Sannes, J.).

The use of fictitious names or pseudonyms to replace the true identities of litigants "runs afoul of the public's common law right of access to judicial proceedings . . . , a right that is supported by the First Amendment." *Doe v. Del Rio*, 241 F.R.D. 154, 156 (S.D.N.Y. 2006) (citing *Does 1 thru XXIII v. Advanced Textile Corp.*, 214 F.R.D. 652, 653 (D. Mont. 1974)); *accord Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 224 (S.D.N.Y. 2015); *see Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984) ("[T]he First Amendment does secure to the public and to the press a right of access to civil proceedings."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). Private civil suits advance the public's interest in enforcing legal and social norms. *Del Rio*, 241 F.R.D. at 159. When a lawsuit involves issues concerning a defendant's actions or a particular incident, instead of challenging abstract public policies, open proceedings serve the judiciary's interest in a fair and accurate fact-finding adjudication. *Id.*

However, "[c]ourts have recognized a narrow exception to the rules requiring disclosure of party identities in cases where individual privacy concerns are implicated in a case," and the "decision as to whether to permit a litigant to proceed anonymously is entrusted to the sound discretion of the court." *Doe #1*, 2018 WL 7079489, at *3.

The Second Circuit has established a list of ten, non-exhaustive factors that courts should consider when determining whether to permit a party to proceed anonymously." *Doe #1*, 2018 WL 7079489, at *3 (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008)). Those factors include:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory

> physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypical weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 190 (citations and internal quotation marks omitted).  The Second

Circuit held that "when determining whether a plaintiff may be allowed to maintain an action

under a pseudonym, the plaintiff's interest in anonymity may be balanced against both the public

interest in disclosure and any prejudice to the defendant."  *Id*. at 189.

## III.   ANALYSIS

After carefully considering the matter, the Court denies Plaintiff's motion for a protective

order for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 75.)  The following

is intended to supplement but not supplant those reasons.

### A.   Whether the Litigation Involves Matters That Are Highly Sensitive and of a Personal Nature

"[I]t is generally well-accepted that claims involving sexual orientation, pregnancy, or

minor children are examples of matters that qualify as being highly sensitive and of a personal

nature."  *Doe #1*, 2018 WL 7079489, at *4 (citing *Michael v. Bloomberg, L.P.,* 14-CV-2657,

2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015)).  However, "the potential for embarrassment

or public humiliation does not, without more, justify a request for anonymity."  *Doe v. Skyline

Auto. Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019) (quoting *Abdel-Razeq v. Alvarez &*

*Marshal, Inc.*, 14-CV-5601, 2015 WL 7017431, at *3 (S.D.N.Y. Nov. 12, 2015)).  "The fact that a case involves a medical issue is not a sufficient reason for allowing the use of a fictitious name, even though many people are understandably secretive about their medical problems."  *Rankin v. New York Pub. Library*, 98-CV-4821, 1999 WL 1084224, at *1 (S.D.N.Y. Dec. 2, 1999) (quoting *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997)); *see also Mottola v. Denegre*, 12-CV-3465, 2012 WL 12883775, at *2 (S.D.N.Y. June 8, 2012) (denying motion to proceed under a pseudonym despite plaintiff's allegations that "psychiatric history" "will be part of this case"); *Rives v. SUNY Downstate Coll. of Med.*, 20-CV-0621, 2020 WL 4481641, at *3 (E.D.N.Y. Aug. 4, 2020) (quoting *Del Rio*, 241 F.R.D. at 160) ("While the complaint includes information about plaintiff's medical history . . . plaintiff's factual claims do not present 'exceptional circumstances that in and of themselves justify overriding the constitutional presumption of openness.'")

Indeed, in many cases involving the ADA or Title IX, plaintiffs frequently proceed under their own names regarding matters that are personal, sensitive, and involve medical records.  *See, e.g.*, *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 183 (2d Cir. 2015) (discussing former student's depression, anxiety, and academic history in connection with ADA claim); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 68 (2d Cir. 2019) (discussing employee's Tourette's Syndrome and Obsessive-Compulsive Disorder in connection with ADA claim); *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 296-97 (S.D.N.Y. 2018) (discussing student's allegations of sexual assault in connection with Title IX action).

As a result, this factor weighs against permitting Plaintiff to shield his identity.

### B.     Whether Identification Poses a Risk of Retaliatory Physical or Mental Harm to Plaintiff or Innocent Non-Parties

"The risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously." *Doe v. Solera Capital LLC*, 18-CV-1769, 2019 WL 1437520, at *4 (S.D.N.Y. Mar. 31, 2019) (citing *Doe v. Smith*, 105 F. Supp. 2d 40, 43 (E.D.N.Y. 1999)).  In *Doe v. Smith*, the court permitted the plaintiff to proceed anonymously after she provided specific evidence from medical professionals predicting that revelation of her identity would likely 'cause psychological and emotional pain so intense that it would threaten her stability, her safety, and even her life.'" *Smith*, 105 F. Supp. 2d at 43.

Here, Plaintiff has not provided any medical corroboration to support his claim that "he is fearful that identification poses a risk of retaliatory physical or mental harm." (Dkt. No. 68, Attach. 2 at 6.)  As a result, the Court declines to speculate regarding "the nature, level or intensity of his mental injury." *Smith*, 105 F. Supp. 2d at 42.

In addition, a "[p]laintiff's allegation that she has been subjected to death threats would provide a legitimate basis for allowing her to proceed anonymously." *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996).  However, if a plaintiff has not provided any details of the supposed threat, then that "plaintiff simply has not shown that she is entitled to proceed under a pseudonym in this action." *Shakur*, 164 F.R.D. at 362.  In contrast to evidence of actual physical harm, courts have found that evidence of embarrassment, social stigmatization, and economic harm provides an insufficient basis for proceeding anonymously. *Doe v. Delta Airlines, Inc.*, 672 F. App'x 48, 52 (2d Cir. 2016); *Anonymous v. Simon*, 13-CV-2927, 2014 WL 819122, at *2 (S.D.N.Y. Mar. 3, 2014).

Moreover, "[t]he risk of retaliatory harm that that a plaintiff may face from proceeding with her actual name is considerably reduced when the public is already aware of the plaintiff's

identity."  *Solera*, 2019 WL 1437520, at *5 (citing *Shakur*, 164 F.R.D. at 362 (denying a sexual

assault victim's request to proceed anonymously in part because "those who presumably would

have any animosity toward [the plaintiff] already know her true identity."); *Mateer v. Ross,*

*Suchoff, Egert, Hankin Maidenbaum & Mazel, P.C.*, 96-CV-1756, 1997 WL 171011, at *6-7

(S.D.N.Y. Apr. 10, 1997) (noting that the plaintiff's name was in the action already filed in state

court, thereby inhibiting "[a]ny shield of privacy" that plaintiff would be awarded by proceeding

anonymously)); *see Doe v. Townes*, 19-CV-8034, 2020 WL 239159, at *4 (S.D.N.Y. May 12,

2020) ("Here, Defendant is already aware of Plaintiff's identity, so there is no risk of *increased*

retaliatory harm from Defendant from disclosure of Plaintiff's identity.").

      As set forth in Defendants' opposition, there is no risk of retaliation posed from

identification in this case because Defendants already know the identity of Plaintiff.  In addition,

Plaintiff has not provided any details of any supposed threat that he would face if his identity

was made public.

      As a result, this factor weighs against permitting Plaintiff to shield his identity.

### C.    Whether Plaintiff will Suffer Additional Harms from Public Identification

      "Many courts are reluctant to allow a party to maintain anonymity merely to protect the

person's economic or professional life."  *Doe #1*, 2018 WL 7079489, at *6 (citing *Doe I v.*

*Individuals*, 561 F. Supp. 2d 249, 257 (D. Conn. 2008)).  Parties to litigation often face financial

risks because litigation is "quintessentially public and public disclosure is in general an inherent

collateral consequence of litigation."  *Doe v. Bausch & Lomb, Inc.*, 18-CV-0352, 2018 WL

2248418, at *3 (D. Conn. May 16, 2018).  "Therefore, any financial consequences plaintiff[]

may suffer as a result of this suit, such as the loss of jobs or the inability to obtain employment,

is a risk common to parties in a majority of lawsuits and does not, standing alone, support plaintiff[']s request to continue this suit anonymously." *Doe #1*, 2018 WL 7079489, at \*6.

Here, Plaintiff's concern that "[h]e considers this matter highly sensitive as he fully expects to work in a position which requires high level security clearance" (Dkt. No. 68, Attach. 2 at 6-7), is the type of "reputational harm and similar, negative economic and other tangible affects [which] naturally flow as consequences from litigation." *Doe #1*, 2018 WL 7079489, at \*6; *see Anonymous v. Medco Health Sols., Inc.*, 588 F. App'x 34, 35 (2d Cir. 2014) (finding plaintiff physician's concern that further public disclosure of his "personal health information" could "adversely impact his patient base," to be "speculative in nature" and too "vague and far-fetched" to justify anonymity); *Rives*, 2020 WL 4481641, at \*3 (finding plaintiff's concern that even if he prevailed and were reinstated as a student he would "suffer irreparable harm in [his] application to residency programs were [his] name to be publicly associated with litigation against a medical school," to be too speculative because the plaintiff had "not provided support for his contention that residency programs would retaliate against him for filing even a meritorious lawsuit based on sexual harassment and disability discrimination."); *Vega v. HSBC Sec. (USA) Inc.*, 16-CV-9424, 2019 WL 2357581, at \*1-2 (S.D.N.Y. June 4, 2019) (denying plaintiff's request to proceed under his former legal name—effectively a pseudonym—despite plaintiff's concern that prospective employers might reject him because he filed a complaint against a former employer).

In addition, under this factor, courts "consider whether the plaintiff commenced suit in order to prevent the type of injury that disclosure of h[is] identity would cause.  For example, a plaintiff may proceed anonymously in a privacy claim if disclosure of h[is] name would inflict

the type of injury []he seeks to avoid." *Solera*, 2019 WL 1437520, at \*5 (citing *Sealed Plaintiff*, 537 F.3d at 190); *Roe v. Ingraham*, 64 F. Supp. 536, 547 n.7 (S.D.N.Y. 1973)).

Plaintiff's claims against Defendants include employment discrimination, retaliation, wrongful termination of his status as a student, conspiracy, harassment, and due process violations.  These injuries would not be incurred as a result of disclosure of Plaintiff's name in the proceedings.  *See Solera*, 2019 WL 1437520, at \*5 (finding that where the plaintiff's claims include employment discrimination, a hostile work environment, retaliation, and failure to pay overtime, that "[t]hese injuries would not be incurred as a result of disclosure of [plaintiff's] name in the proceedings.").

As a result, this factor weighs against permitting Plaintiff to shield his identity.

### D.     Whether Plaintiff is Particularly Vulnerable to the Possible Harms of Disclosure

"The fourth relevant factor, which examines whether [P]laintiff[ is] vulnerable to the potential harms of disclosure, generally relates to [his] age[]." *Doe #1*, 2018 WL 7079489, at \*6 (citing *Sealed Plaintiff*, 537 F.3d at 190; *Del Rio*, 241 F.R.D. at 158 ("[C]ourts have been readier to protect the privacy of infant plaintiffs than of adults, whether because the children are conceived as more vulnerable or because the child whose privacy is at stake has not chosen for himself or herself to pursue the litigation.")); *see also Solera*, 2019 WL 1437520, at \*6 ("[C]ourts have been readier to protect the privacy interest of minors in legal proceedings than of adults.").

In this case, Plaintiff is not a minor who has had no say in deciding whether or not to proceed with this litigation.  Even though Plaintiff is still in his formative years, he is an adult college student who availed himself to the courts by filing this suit.

As a result, this factor weighs in favor of requiring Plaintiff to identify himself in this suit.

### E.   Whether the Suit is Challenging the Actions of the Government or Those of Private Parties

When a lawsuit challenges governmental actions, actors, or policies, the plaintiff has a strong interest in proceeding anonymously.  *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003); *see also Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) ("[W]hether the defendants are governmental entities is significant because a challenge to a governmental policy ordinarily implicates a public interest and the government has less of a concern with protecting its reputation than a private individual.").

Here, Plaintiff's suit challenges the actions of private parties.  "This factor therefore weighs in favor of public identification of [P]laintiff[]."  *Doe #1*, 2018 WL 7079489, at *7 (citing *A.B. v. Hofstra Univ.*, 17-CV-5562, 2018 WL 1935986, at *3 (E.D.N.Y. Apr. 24, 2018) ("The fifth factor seems to weigh against [p]laintiff as this is a suit between private parties.")).

### F.   Whether Defendants Would be Prejudiced by Allowing Plaintiff to Proceed Anonymously

When evaluating this factor, "the court must assess [1] the fundamental fairness of allowing plaintiffs to proceed anonymously, [2] the damage to defendants' reputation caused by maintaining plaintiff['] s anonymity, and [3] the difficulties associated with conducting discovery in an anonymous proceeding."  *Doe #1*, 2018 WL 7079489, at *7 (citing *EW*, 213 F.R.D. at 112).

It is undisputed that Defendants already know the true identity of Plaintiff.  This suggests that Defendants would not be prejudiced by an anonymous proceeding because Defendants know specifically who filed this lawsuit.  *See id.* (finding that where the defendants already knew the identity of the plaintiffs, they would not be prejudiced by an anonymous proceeding, particularly given the plaintiffs' offer to provide the defendants "with a confidential, sealed matrix linking

their true identities with their respective Doe pseudonyms."); *Doe v. Colgate*, 15-CV-1069, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) (Kahn, J.) ("Defendants are aware of [p]laintiff's true identity and will have an uninhibited opportunity to litigate this matter regardless of whether [p]laintiff's identity is disclosed publicly."); *Kolko*, 242 F.R.D. at 198 ("Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers.  Indeed, defendants already know plaintiff's true identity.").

However, "[w]here a case involves potentially damaging allegations, 'basic fairness dictates that plaintiffs who publicly accuse defendants in civil suits must sue under their real names.'"  *Solera*, 2019 WL 1437520, at *6 (quoting *Mateer*, 1997 WL 171011, at *6); *see Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015) (holding that there is prejudice against a defendant when a defendant is "required to defend itself publicly before a jury while plaintiff could make her accusations from behind a cloak of anonymity.").  Here, "Plaintiff's allegations are related to the professionalism exercised by Defendants and courts have found that defending against such allegations publicly, while a plaintiff is permitted to make h[is] 'accusations from behind a cloak of anonymity,' is prejudicial."  *Doe v. Gong Xi Fa Cai, Inc.*, 19-CV-2678, 2019 WL 30304793, at *2 (S.D.N.Y. July 10, 2019) (quoting *Shakur*, 164 F.R.D. at 361).

As a result, I find that this this factor weighs in Defendants' favor, albeit only slightly. *See Gong Xi Fa Chai*, 2019 WL 3034793, at *2 (finding that this factor weighs in favor of the defendants where the defendants were aware of the plaintiff's identity but the plaintiff's allegations related to the professionalism of the defendants); *Solera*, 2019 WL 1437520, at *7 (finding that even where the defendants were already aware of the plaintiff's true identity, "the

fundamental unfairness of [the defendants] sustaining reputational damage while [the plaintiff] stands behind the cloak of anonymity causes prejudice to [the d]efendants. . . . [which t]herefore . . . weighs against proceeding anonymously.").

### G.    Whether Plaintiff's Identity Has Been Kept Confidential Thus Far

Under the seventh *Sealed Plaintiff* factor, courts consider whether the plaintiff's identity has thus far been kept confidential.  *Sealed Plaintiff*, 537 F.3d at 190.  Prior disclosure to the public of a plaintiff's identity effectively nullifies the shield of privacy provided by proceeding anonymously.  *See, e.g., Shakur*, 164 F.R.D. at 362 (holding that where the plaintiff alleges that the press is aware of her identity, residence, and place of employment, she "has not shown that she is entitled to proceed under a pseudonym.").

In *Mateer*, the court noted that (1) the defendants had sued the plaintiff in state court under his full name, and (2) references to the state court case in the federal action were constant and pervasive.  *Mateer*, 1997 WL 171011, at *7.  As a result, the court held that "[a]ny shield of privacy provided by allowing [the plaintiff] to proceed anonymously in the present case would . . . be a flimsy one, because any interested person could learn his identity by investigating documents available in the state court public files."  *Id.*

Here, as set forth by Defendants in their opposition memorandum of law (Dkt. No. 75 at 7-8), Plaintiff sued Defendant Cornell in state court, which Plaintiff refers to extensively in the Amended Complaint.  (Dkt. No. 8 at 10-12.)  Similar to the facts presented before the court in *Mateer*, here, an interested person could learn Plaintiff's identity by investigating documents available in the state court public files.

As a result, this factor weighs in favor of requiring Plaintiff to identify himself in this suit.

**H.**     **Whether the Public's Interest in the Litigation is Furthered by Requiring Plaintiff to Disclose His Identity and Whether There is an Atypically Weak Public Interest in the Litigation**

The eighth factor is whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity. *Sealed Plaintiff*, 537 F.3d at 190. It is "in the public interest that the price of access to the courts not be too high." *Del Rio*, 241 F.R.D. at 158 (citing *New York Blood Ctr.*, 213 F.R.D. at 112-13). "[L]awsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties." *Shakur*, 164 F.R.D. at 361 (citing *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974)). There is a "general presumption that parties' identities are public information." *Hofstra*, 2018 WL 1935986 at *3; *accord Does I thru XXII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). Plaintiff bears the burden of showing that his private interest in anonymity overcomes the presumption of disclosure of his identity. *Hofstra*, 2018 WL 1935986, at *3.

Plaintiff has not presented any evidence to overcome this general presumption of disclosure of his identity.

The ninth factor is whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities. *Sealed Plaintiff*, 537 F.3d at 190. Where the action in the lawsuit is not based on "abstract challenges to public policies but rather with regard to particular actions and incidents, open proceedings nevertheless benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication." *Del Rio*, 241 F.R.D. at 159 (concluding that the factual nature of the lawsuit, which concerned a series of incidents involving mistreatment by police officers, weighed in favor of disclosing plaintiff's identity).

16

Here, Plaintiff does not seek resolution of an abstract legal principle.  His claims concern specific, fact-based incidents.  There is no atypically weak public purpose since the case concerns alleged specific wrongdoings of private parties.  Further, since this case involves alleged employment discrimination based on Plaintiff's race, religion, sex, national origin, disability, veteran status, and ethnicity, it is likely that the public will be interested in the facts of this case.  Moreover, these issues "further the public's interest in enforcing legal and social norms."  *Skyline Auto.*, 375 F. Supp. 3d at 408 (citing *North Jersey Media Grp. Inc. v. Doe Nos. 1-5*, 12-CV-6152, 2012 WL 5899331, at *8 (S.D.N.Y. Nov. 26, 2012).

As a result, the eighth and ninth factors weigh against proceeding anonymously.

I.    **Whether There are any Alternative Mechanisms for Protecting the Confidentiality of Plaintiff**

The tenth and last factor is whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.  *Sealed Plaintiff*, 537 F.3d at 190.  If a viable alternative to complete anonymity exists, this factor weighs against a finding for anonymity. *See Doe v. United States*, 16-CV-7256, 2017 WL 2389701, at *2 (S.D.N.Y. June 1, 2017) (determining that it would be inappropriate for the plaintiff to proceed under a pseudonym where alternative measures could be taken to protect his privacy interest).  Sealing and redacting certain documents containing sensitive information are sufficient alternatives to anonymity and, in fact, routinely done in cases involving sensitive matters.  *Anonymous v. Medco Health Sols., Inc.*, 588 F. App'x 34, 35 (2d Cir. 2014) (rejecting the assertion that a plaintiff's medical condition and its economic effect on career prospects justified the plaintiff's request to proceed under a pseudonym); *see Skyline Auto.*, 375 F. Supp. 3d at 408 (citing *Doe v. United States*, 2017 WL 2389701, at *2) ("There are multiple other ways a plaintiff's interest can be protected, including

17

the redaction of documents and sealing.  Further Plaintiff could seek a protective order, or the parties could enter a confidentiality agreement.").

The abundance of alternative, less extreme, mechanisms to guard Plaintiff's sensitive information weighs strongly against Plaintiff's request to proceed under a pseudonym.

Upon balancing the interests of Plaintiff, Defendants, and the public, the relevant factors weigh against permitting Plaintiff to proceed anonymously in this case.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for a protective order (Dkt. No. 68) is **<u>DENIED</u>**; and it is further

**ORDERED** that within **thirty days** of the date of this Order, Plaintiff shall file with the Court a second amended complaint revealing his identity and substituting his name for that of John Doe as the plaintiff in this action; and it is further

**ORDERED** that in the event that Plaintiff does not file a second amended complaint within thirty days, I will recommend to the assigned district judge that this action be dismissed; and it is further

**ORDERED** that the parties show cause in writing by February 12, 2021, why Dkt. No. 79 should not be unsealed in its entirety.  The Court will only consider requests to redact portions of Dkt. No. 79 pursuant to Local Rule 5.2.

**ORDERED** that the Clerk of the Court serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

Dated: January 28, 2021
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

18