UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RAY KAMILA,

                            **Plaintiff,**

  vs.                                                 3:19-cv-1189
                                                         (MAD/ML)

CORNELL UNIVERSITY, WILLIAM
CARPENTER, COLLEGE OF ENGINEERING,
LANCE R. COLLINS, DAVID FORBES
DELCHAMPS, LUKE ZACHARY FENCHEL,
WENDY GILMORE-FITZGERALD and
CORNELL UNIVERSITY POLICE DEPARTMENT,

                            **Defendants.**

---

**APPEARANCES:**                                     **OF COUNSEL:**

**KIRWAN LAW FIRM, PC**                  **TERRY J. KIRWAN, ESQ.**
AXA Tower I, 15th Floor
100 Madison Street
Syracuse, New York 13202
Counsel for Plaintiff

**CORNELL UNIVERSITY**                   **CONRAD R. WOLAN, ESQ.**
300 CCC Building, Garden Avenue        **VALERIE L. DORN, ESQ.**
Ithaca, New York 14853
Counsel for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff Ray Kamila commenced this action on September 25, 2019, against Defendants Cornell University, William Carpenter, College of Engineering, Lance R. Collins, David Forbes Delchamps, Luke Zachary Fenchel, Wendy Gilmore-Fitzgerald, and Cornell University Police Department. *See* Dkt. No. 1. Acting *pro se* at that time, Plaintiff filed two form complaints

1

alleging discrimination claims pursuant to both Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). *See id.* Plaintiff requested that these complaints be treated as one document with two separate causes of action. Plaintiff amended his complaint for the first time on October 4, 2019, *see* Dkt. No. 8, and for the second time on October 7, 2021, *see* Dkt. No. 121. Plaintiff's application to proceed anonymously was denied. *See* Dkt. Nos. 89, 118. Defendant Luke Zachary Fenchel was previously dismissed from this case. *See* Dkt. Nos. 73, 96. Currently before the Court is Defendants' motion for summary judgment on all claims. *See* Dkt. No. 123. Plaintiff submitted documents in opposition to Defendants' motion without assistance from his counsel. *See* Dkt. No. 129. No other opposition was submitted. For the reasons that follow, Defendants' motion is granted.

## II. BACKGROUND

### A. Local Rule 56.1(b)

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file a response "admitting and/or denying each of the movant's assertions" in the movant's Statement of Material Facts, and "[e]ach denial shall set forth a specific citation to the record where the factual issue arises." N.D.N.Y.L.R. 56.1(b). Where the opposing party fails to follow Local Rule 56.1(b), the Court shall accept the properly supported facts stated in the movant's Statement of Material Facts. *See id.* ("<u>The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>") (emphasis in original). While this Court must construe a *pro se* litigant's pleadings and papers liberally and interpret them to raise the strongest arguments that they suggest, this standard "does not excuse a *pro se* litigant from following the procedural formalities of summary judgment," including Local Rule 56.1(b). *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003)

2

(citing *Showers v. Eastmond*, No. 00 Civ. 3725, 2001 WL 527484, *4 (S.D.N.Y. May 16, 2001)). "The courts of the Northern District have adhered to a strict application of Local Rule [56.1]'s requirement on summary judgment motions." *Id.* (citations omitted).

As previously mentioned, Plaintiff has failed to provide any meaningful opposition papers to Defendants' motion other than a twenty-three page rant, drafted without the advice of his attorney, which contain bold accusations directed at many individuals and entities, some entirely unrelated to the present action. *See* Dkt. No. 129. Even if the Court were to consider Plaintiff's *quasi pro se* attempt at opposition papers, Plaintiff did not address Defendants' Statement of Material Facts (or any of the arguments made in Defendants' motion papers). *See id.* Accordingly, the properly supported facts set forth in Defendants' "Statement of Material Facts Pursuant to NDNY Local Rule 56.1" are deemed admitted for purposes of this motion. *See* N.D.N.Y.L.R. 56.1(b).

**B.    Background**

Plaintiff transferred to Cornell University in Fall 2017 as an undergraduate in the School of Electrical and Computer Engineering ("ECE") within Cornell's College of Engineering. *See* Dkt. No. 123-1 at ¶ 20. He began work as a "Student Administrative Assistant I" within Cornell's Office of Academic Diversity Initiatives ("OADI") on January 4, 2018. *See id.* at ¶ 21.

Plaintiff struggled academically his first semester at Cornell, finishing the semester with a cumulative grade point average of 1.64 on five completed credits. *See id.* at ¶ 22. As a result of his poor performance, the ECE Committee on Academic Actions ("ECE Committee") sent Plaintiff a letter on January 17, 2018, stating that he needed to take a "Required Leave of Absence for the Spring 2018 semester." *See id.* at ¶ 24. Although Plaintiff contested this leave by offering multiple explanations for his poor academic performance, the ECE Committee declined to alter its

original determination and upheld the decision to place Plaintiff on required leave for the Spring 2018 semester. *See id.* at ¶¶ 25, 28.

As a result of this academic leave, on or about February 13, 2018, Plaintiff was identified as "not eligible-inactive program" during a student employment eligibility check. *See id.* at ¶ 29. Plaintiff's position as a Student Administrative Assistant I was formally "ended," effective February 14, 2018. *See id.* Plaintiff maintained contact with Professor David Forbes Delchamps during the Spring 2018 semester in an effort to prepare for his return from leave. *See id.* at ¶¶ 30-31. During these conversations, Plaintiff referenced his time at Kansas State University ("Kansas State") to Professor Delchamps, a school that Cornell had no record of Plaintiff ever attending. *See id.* at ¶ 31. Plaintiff eventually provided an unofficial copy of his transcription from Kansas State to Professor Delchamps, who thereafter provided it to the Director of Admissions for the College, Scott Campbell, for review. *See id.* at ¶ 33.

Director Campbell personally reviewed Plaintiff's application materials. *See id.* at ¶ 34. He specifically noted that although the application asks all applicants to "[l]ist all high schools and colleges/universities (including summers) you attended, beginning with ninth grade [and to] submit transcripts from each school," Plaintiff did not list his prior attendance at, or provide a transcript from, Kansas State. *See id.* at ¶ 35. Plaintiff also checked "No" for the question "Have you ever been placed on probation, suspended, removed, dismissed or expelled from any school or academic program since 9th grade?" *See id.* at ¶ 36. Director Campbell obtained an official copy of Plaintiff's transcript from Kansas State containing the following notations: "Ineligible to enroll effective December 14, 2012 per Office of Student Life" and "ADMINISTRATIVE DISMISSAL." *See id.* at ¶¶ 37-38. Director Campbell confirmed with Kansas State's Office of

Student Life that Plaintiff had been expelled from Kansas State for conduct described as "stalking behavior[.]" *See id.* at ¶ 39.

After receiving this information from Director Campbell, the Dean of the College of Engineering, Lance Collins, wrote to Plaintiff via email on June 22, 2018. *See id.* at ¶ 41. Dean Collins informed Plaintiff of the material discrepancies between his application and the records from Kansas State, and indicated that "[u]nless you demonstrate that the information we have received about your prior attendance at Kansas State University and subsequent expulsion from Kansas State University is incorrect, I have no choice but to rescind your admission and terminate your enrollment at Cornell University immediately." *See id.* at ¶¶ 42-43.

Plaintiff replied via email on June 27, 2018, that he had "bona fide reasons" for his decision to exclude this information related to Kansas State on his application. *See id.* at ¶ 44. Plaintiff did not dispute that he withheld this information from his application to Cornell. *See id.* Dean Collins thereafter terminated Plaintiff's enrollment at Cornell, stating that "[t]here is no bona fide reason to provide false information in your application[,]" and that Plaintiff's failure to provide complete and accurate information deprived Cornell of material information that is vital to an admission decision. *See id.* at ¶ 45. Plaintiff contested this decision in a five-page letter that was sent to Cornell's Office of Counsel, which forwarded the letter to Dean Collins. *See id.* at ¶ 46. Dean Collins reviewed Plaintiff's arguments but was not persuaded to alter his decision to terminate Plaintiff's enrollment for providing inaccurate application materials. *See id.* at ¶ 47.

Defendants first argue that their motion for summary judgment should be granted as to the individual Defendants because neither Title VII nor the ADA provide for individual liability. *See* Dkt. No. 123-9 at 12. Defendants also argue that the College of Engineering and the Cornell University Police Department are merely units of the University, not legally separate entities, and

as such are improper defendants in the present action. *See id.* at 5 n.1. In addition, neither the College of Engineering nor the Cornell University Police Department was Plaintiff's employer. *See id.* at 13 n.2. Finally, Defendants argue that summary judgment should be granted because Plaintiff was not qualified to continue in a student employment position at the time he was terminated, and thus Plaintiff cannot make out a *prima facie* case of discrimination under either Title VII or the ADA. *See id.* at 14.

### III. DISCUSSION

A.   **Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the

assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

B.     **Individual Liability Under Title VII and the ADA**

Defendants contend that the claims against Defendants William Carpenter (Cornell police officer), Lance R. Collins (Dean of the College of Engineering), David Forbes Delchamps (engineering professor and Plaintiff's advisor), and Wendy Gilmore-Fitzgerald (OADI co-worker) must be dismissed because individuals are not subject to liability under Title VII or the ADA. *See* Dkt. No. 123-9 at 12. The Court agrees. The Second Circuit has specifically held that the ADA and Title VII do not provide for actions against individuals. *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) ("[I]ndividuals are not subject to liability under Title VII") (citation omitted); *Darcy v. Lippman*, 356 Fed. Appx. 434, 437 (2d Cir. 2009) ("[T]he ADA . . ., like Title VII, do[es] not provide for actions against individual supervisors") (citation omitted).

As such, Defendants' motion for summary judgment as to Defendants Carpenter, Collins, Delchamps, and Gilmore-Fitzgerald is granted.

C.     **Title VII Discrimination Claim**

Defendants argue that (1) Plaintiff cannot establish a *prima facie* case of employment discrimination under either Title VII or the ADA; and (2) the proof in the record establishes that Defendants' actions were taken for a legitimate, non-discriminatory reason. *See* Dkt. No. 123-9 at 14-26. In opposition, Plaintiff alleges conspiracies of corruption and deceit between Defendants and numerous entities and public officials, all of which he believes is evidence of Defendants' culpability in the alleged claims of discrimination. *See* Dkt. No. 129 at 2-23.

"Title VII provides that it is 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or

7

privileges of employment because of such individual's race, color, religion, sex, or natural origin.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63 (1986) (quoting 42 U.S.C. § 2000e–3(a)). Discrimination claims under Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first make a *prima facie* case of discrimination by showing that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).

"Once an employee makes a *prima facie* case of [discrimination], the burden shifts to the employer to give a legitimate, non-discriminatory reason for its actions." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). If the employer is able to provide such a reason, "the burden shifts back to the plaintiff to show that the employer's explanation is a pretext for race discrimination." *Id.* To rebut the articulated justification for the adverse action, "the plaintiff must show 'both that the reason was false, and that discrimination was the real reason.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 n.4 (1993) (internal quotations omitted). "'[T]he plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quotation and citation omitted).

In the present case, Plaintiff fails to carry his burden in establishing a *prima facie* case for discrimination under Title VII, specifically with respect to the second element: that he was qualified for the position. It is undisputed that Plaintiff was placed on a required leave of absence

8

after a notably poor first semester at Cornell. *See* Dkt. No. 123-1 at ¶ 24. On or about February 13, 2018, Plaintiff was identified as "not eligible-inactive program" during a student employment eligibility check. *See id.* at ¶ 29. Plaintiff's position at Cornell's OADI was formally "ended" the following day. *See id.* Before Plaintiff ever returned to active student status, his enrollment at Cornell was terminated on June 29, 2018, after Cornell confirmed that Plaintiff had omitted material information from his admissions application regarding his prior attendance at and expulsion from Kansas State. *See id.* at ¶ 45.

If an individual that holds a student employment position is required to maintain active student status to remain eligible for that position, that person is no longer qualified for student employment if their student status becomes inactive. Plaintiff became ineligible, and therefore unqualified for his student employment position, when the ECE Committee upheld its decision to put Plaintiff on mandatory leave in January 2018. *See* Dkt. No. 123-2 at 198. Plaintiff's position was "ended" the day after a student employment eligibility check determined that Plaintiff was no longer eligible for his position. *See* Dkt. No. 123-1 at ¶ 29. Plaintiff was never qualified to return to his position because he never became an active student again once his admission to Cornell was revoked. Since Plaintiff was not eligible to work in a student employment position, he was not qualified for the position, and therefore cannot make out a *prima facie* case under Title VII.

Accordingly, the Defendants' motion seeking summary judgment on Plaintiff's discrimination claim under Title VII is granted.

**D.     ADA Discrimination Claim**

Disability discrimination claims under the ADA are also subject to the *McDonnell Douglas* burden-shifting framework previously discussed. *See McMillan v. City of N.Y.*, 711 F.3d

9

120, 125 (2d Cir. 2013); *see also McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). In accordance with this familiar standard,

> To establish a *prima facie* case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

*Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

Plaintiff's ADA claim is fatally flawed in precisely the same manner as his Title VII claim. Plaintiff cannot make out a *prima facie* case for ADA discrimination because he cannot prove the third element: that he is qualified to perform the essential functions of the position. As previously stated in the Title VII analysis directly above, Plaintiff was not qualified to work in his student employment position once his student status became inactive. Because Plaintiff was not a qualified individual at the time his employment ended, he has no viable claim under the ADA.

Accordingly, the Defendants' motion seeking summary judgment on Plaintiff's ADA discrimination claim is granted.

E.  **Retaliation Claims**

To make out a *prima facie* case of retaliation under Title VII, a plaintiff must plausibly allege the following: "'(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'" *Gordon v. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (quotation omitted). "Protected activity" includes any "action taken

to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).

Almost identical to that under Title VII, a *prima facie* case for retaliation under the ADA requires a plaintiff to show that "'(1) [he] engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse [employment] action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).

"The ADA is not, however, a catchall statute creating a cause of action for any workplace retaliation, but protects individuals only from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing 42 U.S.C. § 12203(a)).  "The ADA's retaliation provision only prohibits retaliation against a person because the person 'opposed any act or practice made unlawful *by this chapter*' or 'made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing *under this chapter*.'" *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (holding that "a workers' compensation claim is not something that is covered by the ADA") (emphases in original); *see also Skinner v. City of Amsterdam*, 824 F. Supp. 2d 317, 332 (N.D.N.Y. 2010) (holding that "filing a complaint with the DOT is not protected participation under the ADA").

As Defendants note, Plaintiff's only pre-recission internal complaint cannot be described as a protected activity as it had nothing to do with discrimination or retaliation.  *See* Dkt. No. 123-9 at 23.  During Plaintiff's Spring 2018 leave, he reported a fellow student for having an expired visa and for having an alleged affair with a professor.  *See id.*  However, a protected activity

11

under either Title VII or the ADA is only such action which opposes discrimination under the respective subchapter. *See Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012); *see also Reynolds*, 701 F.3d at 154. It does not provide relief for any and all complaints that an individual may feel aggrieved by. This internal complaint had nothing to do with Plaintiff's allegations of discrimination under either Title VII or the ADA, and as such, is not considered a protected activity for purposes of his retaliation claims.

Plaintiff testified that he spoke to the director of OADI, Dr. Tremayne Waller, about certain comments that Defendant Gilmore-Fitzgerald made to him about his race, sexuality, and political affiliation. *See* Dkt. No. 123-2 at 126. As Defendants argue, even assuming that this conversation happened and constituted a protected activity under either Title VII or the ADA, Plaintiff failed to establish any connection between this conversation with Dr. Waller and any subsequent adverse consequences he suffered at the hands of Defendants. Plaintiff cannot survive summary judgment by relying solely on his own testimony which fails to show a causal connection between any conversation and his rescission of admission.

Although Plaintiff uses the term "retaliation" numerous times in this case, he fails to lay a legal basis for a retaliation claim under either Title VII or the ADA. Plaintiff fails to establish a *prima facie* case for retaliation under the ADA because he did not engage in any protected activity, nor does he establish any causal connection between such protected activity and his termination. Even if Plaintiff's actions could be construed as "protected activities" for either cause of action, Plaintiff fails to prove any causal connection between these activities and his termination from the OADI, or the rescission of his enrollment from Cornell.

Accordingly, the Defendants' motion seeking summary judgment on Plaintiff's retaliation claims is granted.

F. **Legitimate, Nondiscriminatory Reason**

Even assuming that Plaintiff had succeeded in proving a *prime facie* case of discrimination under either Title VII or the ADA, Plaintiff failed to prove that Defendants' stated reason for terminating Plaintiff, and later rescinding his enrollment, was anything other than a legitimate, nondiscriminatory explanation for Defendants' actions.

According to the *McDonnell Douglas* framework, it is the plaintiff's burden after the employer produces a legitimate, nondiscriminatory reason for its actions to prove that this proffered reason was truly pretext for discrimination. *See Kirkland*, 760 F.3d at 225. Other than Plaintiff's vague and unsubstantiated testimony that the allegations of conspiracies and discrimination are "obvious" based on certain comments and relationships between members of the Cornell faculty, *see* Dkt. No. 123-2 (where Plaintiff states the word "obvious" in relation to his claims a total of forty-two times), there is no factual evidence to support a finding of discriminatory animus.

Plaintiff does not dispute that he was placed on required academic leave after a notably poor first semester at Cornell. *See* Dkt. No. 123-1 at ¶ 24. Although Plaintiff alleges in his complaint that this leave was the result of "false information" provided by "Ms. Gilmore-Fitzgerald, William Carpenter, Liane Fitzgerald, and others at the school who are friends with Ms. Gilmore-Fitzgerald, David Forbes Delchamps, and William Carpenter, with the sole motive of having Plaintiff placed on academic leave[,]" *see* Dkt. No. 121 at ¶ 13, Plaintiff never proffered such allegations in his appeal to the ECE Committee after first receiving notice of the mandatory leave, *see* Dkt. No. 123-2 at 184-88. He provided a multitude of personal explanations for why he struggled to succeed the previous semester, but none involving discrimination or retaliation of any kind. *See id.* Even though Plaintiff was displeased that the ECE Committee did not alter its

13

decision to require a leave of absence after his explanations, the fact that he later fostered the belief that individual Defendants in this suit conspired to bring about this leave does not alone generate any support for his discrimination claim. Plaintiff failed to show that Defendants' explanation for his mandatory leave was factually flawed or inconsistent in any way, and as such, does not make a supported argument that Defendants' stated reason was pretext.

Regarding Plaintiff's termination of enrollment at Cornell, it is undisputed that Plaintiff withheld material information about his attendance and expulsion from Kansas State from his admissions application. *See* Dkt. No. 123-1 at ¶¶ 32-44. Plaintiff did not deny that he omitted this information from his application but claimed that he had "bona fide reasons" for doing so. *See id.* at ¶ 44. Dean Collins justified his subsequent decision to terminate Plaintiff's enrollment at Cornell by explaining to Plaintiff:

> There is no bona fide reason to provide false information in your application. . . . You did not provide complete or truthful information in response to either question [about prior attendance or prior expulsions]. The admissions committee must have complete and accurate information about other college attendance and prior disciplinary history in order to make an informed decision when acting on a student's application. Your failure to provide complete and honest answers deprived the committee of this material information.

*See id.* at ¶ 45. Plaintiff contested this decision in an Article 78 proceeding, but the New York State Appellate Division, Third Department, upheld the Dean's decision. *See Kamila v. Cornell Univ.*, 182 A.D. 3d 692 (3d Dep't 2020). Plaintiff offers no evidence that Dean Collins' explanation was false or inadequate in any way. Plaintiff's reliance on his own self-serving and far-reaching conspiracy theories are not factually supported, and they are insufficient to survive Defendants' summary judgment motion.

14

Defendants have shown that Plaintiff was forced to take a leave of absence due to his poor academic performance in Fall 2017, and his admission to Cornell was thereafter rescinded once Cornell discovered that Plaintiff had misrepresented/omitted material information on his application for admission. There is no evidence for a rational fact finder to conclude that Cornell had any improper, discriminatory motive for placing Plaintiff on mandatory academic leave and subsequently terminating his enrollment at Cornell.

Based on the foregoing, the Court grants Defendants' motion for summary judgment in its entirety.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 123) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 8, 2022
      Albany, New York

_/s/ Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge